Good morning, Your Honors, and may it please the Court, again, my name is Daniel Lawrence. I represent the appellants, the Wilcoxes. I'd like to reserve five minutes for rebuttal, please. Our position, of course, is that the Court should reverse the District Court in all respects and remand this matter for trial. There are jurisdictional issues, which the Court notified us of last Friday, well, the Friday before, last Friday before Memorial Day weekend. Second, I think the Court had some questions about what the District Court did and did not do in its orders. And third, there are obviously the substantive issues to address. Why don't you start, perhaps, with Rule 54 issues? Do you have any clarity in terms of what claims remain and how they relate to these claims on appeal? Okay, well, I feel that we do. The claims that remain, fundamentally, are only the claims against Attorney Warren, as far as I can tell. But we can, I think you may be asking two questions at once, but why don't I address the jurisdictional issue and then maybe we get to what claims remain. So, supplemental jurisdiction under 28 U.S.C. 1367B is not an issue. By its own terms, 1367B applies only to claims asserted by plaintiffs and does not apply to any claims asserted by any party other than the plaintiff. It really plays no role in these claims, such as counterclaims or cross-claims, asserted by defendants or any third-party defendants. And basically, I'm quoting Wright and Miller here. I mean, it's clear that a defendant or a third-party defendant does not become a plaintiff for purposes of 1367B by asserting a claim. The only diversity that matters here is the original plaintiff versus the defendants. And I do want to point out, and if you need a citation, I think this is all discussed in 13D Federal Practice and Procedure at 3567.2, 3rd edition. So, if I can just summarize where I think we are with respect to the Rule 14 question. Given 1367, it appears that we do not have a problem of subject matter jurisdiction because the Rule 14 claim is made by the defendant. Correct. Rule 14, by its own terms, may or may not have been satisfied. But that's not a subject matter jurisdiction question. And because Rule 14 wasn't raised, I don't see that we have any ability to raise it sua sponte. If it were subject matter jurisdiction, we would. But, as you said, I don't see that there's a subject matter jurisdiction problem because the Rule 14 claim is made by the defendant. Well, I agree with you. And I would also point out... I'm sorry. Did you have more? Yeah. I would also point out that in the amended complaint, which is the operative complaint, Inigon does make claims against Mr. Warren. And so, although our clients brought Mr. Warren into the lawsuit, claims are asserted. There are two claims asserted against him by Inigon. That is the operative complaint. And so, in a sense, it sort of wipes the slate, I think, on the 14 issue. We did serve process under Rule 14. The third party joined. It was timely. I don't think there's any technical issue with Rule 14. And certainly, with respect to whether or not that would be an issue, I think an additional point, in addition to the ones you made, Your Honor, is that essentially now he is a defendant. So our third-party claims are really in the nature of a cross-claim. And a pleader is not an issue, and I think we've just been through that. As to the 54B findings and whether they're adequate or not, I think all the parties agree that an interlocutory appeal now is appropriate. The judge, obviously, District Court Judge Judge Rothstein, agrees with that. That judge is entitled to substantial discretion under the law applicable to the rule. And the judge entered 54B findings that were fairly extensive, and we reviewed them in our brief. I don't know that I need to go over them here unless the court has a question about or feels that they were inadequate in some way. I guess just helping me, at least, find where in the record the court has disposed of or whether there's something that's missing. I think the four claims or so that were contemplated in the focus order, the Wilcox's ever-breach-of-contract counterclaim, and then Intigon has three other declaratory judgment claims relating to the policy. Where did the district court dispose of those claims? Yeah, let me address that now.  So, first of all, I think the first question was Intigon's first class of action, seeking a declaratory judgment regarding liability limits. Did the court dispose of that? And we would submit no, not as such. But it wasn't really within the relief requested by Intigon's motion for partial summary judgment to impose a declaratory judgment declaring the liability limits. By implication, I guess you could say, well, it dismissed Intigon, and so it had a $25,000 policy, and if Intigon is dismissed and our claim is that it should be liable by estoppel for the full $1.6 million judgment, that claim apparently, according to the district court, is gone. So I guess to summarize, why shouldn't we be worried about piecemeal appeals? Are any of these other claims that are lingering around likely to find their way up to us separately? Well, yeah, I was going to get into the other questions you asked, but I'll address that one, which is that the issue with regard to is it better to have two appeals or two trials, the only trial remaining will be against Warren, and it's only legal in my practice scheme. It will be a very short trial, and there's nothing that's going to be decided in that trial that is likely to influence the trial of the claims against Intigon and SFE if they are reversed eventually and go forward, depending on what your honors do here. And so definitely if your honors don't decide the appeal now and we wait until after the Warren case, there will definitely be an appeal, just like this one and perhaps with other issues arising out of whatever the Warren trial provides. Well, what about, I mean, so do you have a breach of contract counterclaim against Intigon still? Yes. Okay, and what happens, and that's not before us here. That wasn't under the 54B. Right. Okay. So what happens with that going forward? Well, what happens with it. Because that seems awfully close to the claims that are appealed. Is it not? Well, it is. It's implicit in what's appealed, yes. I mean, Intigon was functionally dismissed, right? So if we have a claim against Intigon and we go forward in trial, then that case will be. I guess, I mean, just trying to figure out the posture in which this appeal comes to us. So is your view that the district court implicitly certified those related claims as well on appeal or that they didn't and those are there and that those could come up in a separate appeal even though they seem to deal with the same subject matter? Well, so the court ruled on whether Intigon had an obligation essentially based on whether the Wilcoxes tendered their defense to Intigon, and that issue is before the court. And our argument is that there is no such requirement. It's not in the policy. And so, therefore, Intigon breached its policy by failure to provide a defense to the claim, which the policy says that Intigon has to defend them against any claim or lawsuit. Well, I guess that's just the concern, right, is we don't want to head you in a tails-they-lose situation where, for example, if we would affirm the district court on this, then you come back and say, well, but now you've breached the contract, which seems to be the same to the extent it involves the tender rule. It seems to involve basically the same claim. Well, I guess, you know, I haven't thought maybe too cleverly about that and maybe not as cleverly as Your Honor, but it seems to me that if this court says there is no right to the contract benefit, to the performance by Intigon of the contract to defend the claim because the Wilcoxes violated the tender requirement, then there is no breach of contract claim that can be made. However, we do submit that under Washington law, there is no duty to tender when there is a defense of a claim. Well, and that's before us. So if your position is that our resolution of this one way or the other by law of the case or ends up resolving these remaining claims, maybe that settles the issue. But that's the question. Yeah, maybe. It's hard for me to commit to that now because I don't know how you're going to rule and what you're going to say. Then you did have a question also on whether Intigon's fourth cause of action, seeking a declaratory judgment on its duty to indemnify was ruled upon. Again, I don't think Judge Rothstein specifically ruled on that, but at some point there was a tender upon the Wilcoxes being advised by Intigon of the default judgment. So, you know, that is a place we could go. I mean, you know, at some point the Wilcoxes did in fact request Intigon to step in. They hired Smith Freed Eberhard, and I think we know the story there. The Wilcoxes' first counterclaim for breach of contract, you asked about that one. And, again, I'm just kind of going through the litany of the questions you asked, Your Honor. I think we discussed that, Justin, in the interest of time. Okay. Yeah, we can move on. So I think unless there are further questions about the procedural issues, supplemental jurisdiction, Rule 54B or 1367, I think we can go past that. So let me try to get back on track here. So I think really now the question is really about whether the Court properly dismissed Intigon and whether it properly dismissed Smith Freed Eberhard. And, you know, we submit that there are various problems with that, that Intigon was dismissed for improper reasons, which included the, you know, essentially the tender issue. Failure to tender is a defense to coverage. It's not a defense to a duty to defend, right? And that's the Expedia case that we cited. Let me see if I can fast forward this a little bit. Sure. Your argument is in part that the duty to defend is triggered when the claim is tendered before the lawsuit is filed. That is absolutely correct. And if that's so, the only problem that Intigon can point to is that they were not notified of the filing of the actual lawsuit, but the duty to defend has already been triggered. That is absolutely right. So that's part of your argument. That is our argument, yes. Now, if I disagree with that argument and that there's an independent duty to tender the lawsuit, not just the claim, I think there's an argument that the phone call made by Elizabeth and the phone call that might or might not have been made by Daniel was enough. Yes, and there's a dispute of fact, which the judge unfortunately resolved, we argue, improperly, by saying that because there was no written record of the phone call, that somehow that should be construed against our client, our clients, and that no reasonable jury could believe they made those phone calls, despite the fact that they both testified under oath that the phone calls were made. Well, no, not phone calls. Oh, phone calls. One phone call is undisputed. That's the phone call by Elizabeth. Yes. The disputed phone call, singular, is by Daniel. By Daniel, yes. Yeah. Pardon me, I misspoke. Yeah, yeah, yeah. But here's my problem with respect to Daniel's phone call. We do have clear testimony by both Elizabeth and Daniel that he made the phone call. They say where he was standing in the shop. We do know that as to his past behavior, right after the accident, he did make a phone call. So, I mean, his behavior is consistent with having made the phone call. Yet the phone records, AT&T, Elizabeth looks at them, finds nothing, throws them away. The Comcast records are put in front of Daniel, and there's no record of such a phone call, even though there is a record of such a phone call by Elizabeth. So, is the district court wrong to say that there is no material dispute of fact, given that the records are right there in front of us, and there's no record of the phone call? Well, the phones were made from the shop, and there were other phones in the shop, and he may have used another phone. So, what evidence do we have in front of us that there were other phones with other sort of plans in the shop? Other plans? Well, other than AT&T and other than Comcast. I mean, so there are other phones in the shop, but you're saying they must have been with other carriers, or maybe with a different account. What evidence do we have about other phones that didn't carry either the AT&T account or the Comcast account that they looked at? I don't think there's any specific evidence. It is their testimony. It's his testimony that he made a phone call. He certainly made a phone call, and if it's not in those records, then either those records are in error, or he used a different phone. Is there evidence? I'm asking you that question. Is there evidence in the record where they say there were other phones in the shop that were neither on the AT&T account or on the Comcast account for which the records were shown? You know, unfortunately, I mean, we could get back to you on that, but unfortunately, I did not take those depositions, and that is a question I cannot answer at this time. Okay, but for the moment, let me just focus on Elizabeth. Elizabeth makes a phone call, and in that phone call, she says, we had not, we hadn't known about this lawsuit. That sounds as though there is a lawsuit that they hadn't previously been notified, and she's making this phone call two days after they've been served. That sounds to me, and this is kind of an alert to the other side, that sounds to me as though that may be sufficient notice. She says hadn't been served, hadn't known about it, about, quote, this lawsuit. She's not saying about some lawsuits. She's saying this lawsuit. Well, I see you nodding affirmatively, but isn't it clear that she's not referring to this lawsuit? She's referring to the demand letter because she talks about two years, and we haven't heard anything, or we hadn't heard anything for two years, that the lawsuit was filed two weeks before. I think that testimony comes out sometime later where I think she's a little bit confused. I mean, she's a layperson. She doesn't. Well, in her deposition, she also, I think, makes clear that she's referring to the demand letter, not to the lawsuit that we're concerned with. The point is she uses the word lawsuit. Well, I understand, and she may, as you say, she's not a lawyer. She may be confused, but what she says is, well, the reason I'm calling is two years has gone by, and we hadn't heard anything about this lawsuit. Now, the lawsuit that we've been talking about was filed two weeks before that, but the insurance demand letter was two years before. So isn't it clear that although she uses the word lawsuit because she's not an alerted-in-the-law person, that she's not referring to the lawsuit that we're referring to, and isn't it also clear that she makes that clear that that's what she's referring to in her deposition? Well, that's a lot of questions, but I would say those two are not. I agree, I agree, but feel free to take your time. Those are not mutually exclusive. You know, if you're sitting there, you're a layperson. There's been a lawsuit filed. There was obviously a demand made, you know, two years prior to that of which Enneaghan knew. What's telling about it is that if she's conflating lawsuit and demand, Enneaghan should have been doing that long ago. I mean, that here Enneaghan is sitting there saying, you know, oh, well, we had no notice. She's using the word lawsuit, and it's clear this thing is progressing. Enneaghan is an insurance company. They handle motor vehicle collision claims all the time. They know when they get these large demands, and they have a $25,000 minimum limits policy, that there is likely to be a lawsuit or at least a concerted effort to find some way to get compensation for the client on the plaintiff's behalf, on Mr. Hoff's behalf, that will exceed the $25,000. And usually that has to be done by filing a lawsuit. I guess through the lens of Washington law here and the tender rule, what does the tender rule look to? Is it tendered if Enneaghan should reasonably have understood that as notice, or did the Wilcoxes have to actually have intended to provide that notice? Does that help us resolve this at all? Is there anything in Washington law that speaks to this situation? I think Washington law is a little bit unclear on this. And frankly, I would say if there's any doubt in the court's mind about Washington law and what it provides, perhaps it would want to refer that issue to the Washington State Supreme Court. But the way I read the case is those cases involve different policy language. They talk about tendering when there's a duty to defend a lawsuit, and that's the language in the policy, to defend a lawsuit, not a claim or a lawsuit. Pardon me. When she's asked about this phone call in her deposition, question, when you said lawsuit, what did you mean by that answer? Well, I was referring to the demand letter. Isn't that the end of the issue on that? No, Your Honor, it's not, because I think answering both your questions, Washington law doesn't say that the insurance company's duty is not triggered until the insured has some subjective understanding and belief and makes some subjectively intended request for a defense. Well, I think part of the answer is, if you read on, I was referring to the demand letter for $16 million. Were you referring to anything else? No, she says, because there wasn't a lawsuit at that time. Well, of course, there was a lawsuit at that time. Your husband had been served with that lawsuit two days before. You've articulated the facts. So she does not understand the question. That goes back to my earlier comment that she was confused. And, indeed, the word hadn't that was in her phone call, when she's asked the question in the deposition, that word is not used. The word haven't is used, which changes the meaning of what she said. I don't know whether you picked that up. But the transcript of the phone call is, we hadn't known. And the question that's reporting to read the transcript does not say hadn't. It says haven't, which then misleads her into thinking, well, wait a minute, we're talking about something else. But it's clear when she says there wasn't a lawsuit, it's clear that's wrong. It is also very clear that she is calling in response to the lawsuit that had been served on her husband two days before. Correct, Your Honor. I have a few seconds left, I think, in my first 15 minutes. I don't know if there are others. You're actually over by 40 seconds. We'll give you a couple of minutes on rebuttal.  Sorry. Okay. Thank you, Mr. Lawrence. Yeah. I was misreading the clock. Thanks. Okay. Who's up first? Good morning, Your Honors. May it please the Court, Elliot Harris on behalf of Vinegon in this case. I'm going to be trying to keep my time to 10 minutes. Given the conversation with the Appellant's Counsel, I don't want to eat into my co-counsel's time. If we have questions, we'll give you more time. Okay. Great. Again, Your Honors, Elliot Harris on behalf of Vinegon. We ask the Court to affirm the District Court's orders granting the two summary judgments as to my client. First, as the duty to defend, and then second, as to the extra contractual claims, the bad faith, IFCA, and CPA claims. I think I'd like to start with the jurisdictional issues. I don't think there's much dispute between me and Mr. Lawrence. I'm going to go through those pretty quickly. I guess let me just focus maybe the one remaining question. Do you agree under the Rule 54 certification with your friend's view that if we decide this in your favor, that the Wilcoxes still have a breach of contract claim they can proceed with? I would disagree with that, Your Honors, and here's why. If you go look at the counterclaim that they've asserted, the breach of contract counterclaim, it's premised on the duty to defend, which is one of the issues before the Court. The other issue before the Court are the extra contractual claims, and so in their counterclaim for breach of contract, those are the two bases. Violation of the Consumer Protection Act, which are the WAC regulations, the Unfair Claims Practices Act, those are the two bases for their breach of contract claim. So I would submit that if this Court decides this case in favor of Anagon and affirms the District Court rulings, the breach of contract claim, there's nothing left of it as it was pled in the counterclaim. And as to your claims, if we decide that there is no duty to tender, that the remaining claims about indemnification and liability limits? I agree with if the Court affirms the District Court's rulings as they are, those claims would go away. If this case is reversed and the case comes back down, the second cause of action regarding the breach of the policy conditions, that's a coverage issue. And we can talk about, there was some discussion during the appellant's argument about the difference between coverage and the tender and how that implicates coverage versus the duty to defend. That's a coverage defense. That's a defense that the Wilcoxes did not follow the policy terms and conditions by providing notice and providing a copy of the lawsuit to Anagon. That would void coverage if the Court agreed on that point. That's not being asserted, and that issue is not before the Court. Well, I guess since I ask of you, since your client was the one who brought, I believe, two separate summary judgment motions in succession, why shouldn't we be worried about your piecemeal appeals or the Wilcox's going forward, given that we've got one policy here, one course of conduct, and we're being asked two questions about it now, and it sounds like we might be asked another three questions about it later if you don't like the result. No, I would disagree with that, Your Honor. The question of the duty to defend is a threshold question. All of the claims rise or fall on that duty to defend issue in the sense of the counterclaims for breach of contract, the extra-contractual claims for bad faith, Insurance Fair Conduct Act. They make a variety of other arguments, but they really come down to the same central issue, which is before the Court today. Okay. I'll let you go ahead and proceed on the merits. Sure. I will talk, I think, about some of the Court's questions. First of all, with regard to tender, and the Court indicated there were some issues about what tender really means here. Well, the Washington courts have talked about that, the Levin decision, the Griffin decision. The courts have talked about you don't need to use the magic language tender. However, there must be an affirmative act, something that makes it clear that you are tendering the lawsuit. Why shouldn't the Intigon employee on the other side of this call, why shouldn't they have reasonably understood this to have been a tender where the name lawsuit was mentioned? There was easy to, at least on constructive notice, if not actual notice, that there is a lawsuit pending. Mr. Lawrence, in his argument, said these are sophisticated insurance companies. They deal with this all the time. They deal with individuals all the time. Individuals call, and they will say, hey, I'm calling about this lawsuit. What lawsuit are you talking about? And they'll say, well, you know, I got in this car accident. But that question wasn't asked. Intigon didn't say what lawsuit are you talking about. No, I agree with you. And that's part of their argument is that we somehow had a duty to then inquire about that. He says we hadn't known about this lawsuit, and the Intigon person doesn't respond. There's a whole series of questions about it. You know, tell me more, tell me more. You look at the context of where this happened. This wasn't the assigned claim adjuster. She just called the 800 number and was talking to some person. What comes after that I think also bears on the court's decision, which is Mr. Warren gets involved, and there's a conversation with Mr. Warren and the assigned claims adjuster. No mention of a lawsuit, no mention of service. There's nothing for inquiry notice at that point. It could be a successful or at least plausible lawsuit against Mr. Warren. We understand that. But I think it factors into Intigon's mindset. Even if someone had gone back, the assigned adjuster, and said, okay, somebody mentioned a lawsuit in your prior phone call. Do we need to follow up with them? Well, let's talk to their lawyer because now we've got a letter of representation the next day indicating that a lawyer was involved on behalf of the Wilcoxes. Same thing during that conversation, no mention of anything. But either side. I mean, Intigon didn't say, hey, why are you a lawyer now? What's going on? Well, there is a discussion about that. And Mr. Warren says, well, hey, I want to depose him if this case goes into suit. There was mention in our briefing about that where he's inferring that there actually isn't a lawsuit. That was part of our— Well, he's not implying that. I mean, he just doesn't mention it. He doesn't mention it. I would love to interrogate. I would love to question this guy because he's right out of jail when he gets hit, and he goes right back to jail. I'd love to question him. He says if it goes to trial. He doesn't say if there is a lawsuit. No, he says if it goes to trial. Respectfully, Your Honor, I think he says if they file suit. I would love to depose him. Give me the page site for that one. Sure. It is in the transcript of the phone call. I don't have the site right off hand. I know it's in our briefing, Your Honor. Okay, I can find it.  And so that was part of the basis for— I'm afraid that all the more puts the lawyer in trouble. Okay. I can find it. Don't worry about it. Okay. That was part of the basis for the—I guess it would be the amended complaint that we brought claims against Warren saying that we were misled by his representation to us during that phone call. Those claims were dismissed. They're not before the court today. But I think it's important in context to understand the court's question about the tender and from whose perspective are we looking at. Who are we deciding whether a tender has been made? And the courts have been clear that they have to affirmatively provide that notice to us. But I guess the policy behind that is, as the Washington courts have explained, to ensure that the insured isn't unintentionally triggering coverage or claims under policies. There's no fact here suggesting that the Wilcoxes were trying to decide which policy they wanted to proceed with. They'd just been sued. They'd called and they said, Lawsuit. Why isn't that enough? Given the discussion that takes place, you have to look at it in the context of the insurance company talking to this person who's just calling up and saying, Hey, I'm just calling about this. You know, it's been two years. We haven't heard anything about this lawsuit. Not haven't. Hadn't. Haven't. Did you take the deposition? Was it you who used the word haven't, which was not actually the word? I did take the deposition, Your Honor. I see you're taking issue with the deposition in the changing of the words in the phrasing of it. And I'm also, when she says because there was no lawsuit at that time, I doubt that you were ignorant that there was a lawsuit at that time. Because the lawsuit had been filed Feb. 1. She's making the phone call on Feb. 3. You had to know that she didn't know what she was talking about. I had to know that she didn't know what she was talking about, Your Honor? Well, of course, because there was a lawsuit at that time. And if you'd looked at your dates, you knew darn well there was a lawsuit at that time. Oh, I understand. So the issue, though, is, again, you have someone just calling up saying I'm just using the word lawsuit. No, no, no. I'm now talking about the deposition. Correct. When she says because there wasn't a lawsuit at that time. Correct. Well, there was a lawsuit at that time. The lawsuit was served on them Feb. 1. That phone call is Feb. 3. So when she responds to you because there was no lawsuit at that time, did you know that she was wrong? Did I know that she was wrong? You know the date when it was served and the date of the phone call. That's why I asked her the question during her deposition, which is when you said the word lawsuit during this phone call, what were you talking about? I'm asking you a different question. Okay. She says because there wasn't a lawsuit at that time. She's wrong. There was a lawsuit at that time. Because she's talking on Feb. 3 and the lawsuit had been served on them two days before. When she gives that answer, did you know that she was wrong and did not know what she was talking about with respect to there being no lawsuit? At the time I took that deposition, I didn't know whether she knew that her husband had been served. I'm not asking you that question. I'm asking what you knew. Did I know that a lawsuit? Did you know the date when the lawsuit had been served on them and the date of the phone call that we're talking about? I knew that a lawsuit had been filed when I asked that question. I didn't know whether she knew that at the time she made the phone call. Why does that matter when the policy of the tender rule is for Intigon to have notice, not the Wilcoxes to have intent? I don't think that it clarifies an issue in terms of what the phone call was, what she said during the phone call. As I understand your position, it is she calls up your general number and although she begins by saying, well, the reason I'm calling is two years have gone by and we haven't heard anything about this lawsuit. I hadn't heard anything. We can sort out later whether it matters whether it's happened or hadn't. And then she continues in the very same before there's any interruption by your person. As far as I understand, you guys haven't even made a payment out of this either. We never received anything saying you made payment, the 50,000 payment to Eric Hoffman claimant. So she's, I think it's reasonably clear to me at least that she's not referring to the recently filed lawsuit. And then your representative responds to what she referred to in the last part of her few sentences there. And they go on for several exchanges having nothing to do with the lawsuit. And then in the deposition, you want to clarify this. And you ask her, in effect, what did you mean by lawsuit? And she says, I meant the tender. And so unless there was some duty to independently because she used the word lawsuit in the earlier call, make some inquiry about the lawsuit. Otherwise, it's reasonably clear that what she was referring to was the tender. Yes. I would agree, Your Honor. Let me ask you a question about tender. We heard from the other side, and I think there's some Washington law that we at least arguably support it. Why is it not sufficient in terms of tender that Wilcox tenders the claim and that then discharges responsibility to tender? Why does he have to tender the claim separately as to the suit? I'm not just talking what's Washington law on the point. Yeah. I think there was a question earlier. I see I'm over my time. Go ahead. Take your time. I don't mean to eat into my co-counsel's time, though. So this idea of an independent duty to defend a claim versus a lawsuit. I'm not aware of any authority in Washington that says there's a duty to defend a claim given the circumstances in this case where there is a demand for the policy limits. The policy limits are offered, $25,000. Those are our policy limits. We make them available to you. But, of course, you have a duty to defend in addition to pay off the policy limit. I would agree with that. There is both a duty to defend. So the claim is tendered to you. Why is that not enough to trigger the duty to defend? The duty to defend in the cases that we've talked about, we reference here, talk about a breach. You can't have a breach of the duty to defend until there is a tender of the lawsuit. Well, that's my question because I'm not sure I see Washington law as being perfectly clear on that point. Respectfully, Your Honor, the cases that have addressed this issue talk about this in the context of a lawsuit. There is no case that I'm aware of that talks about a pre-suit notice of a claim somehow creating a duty to hire an attorney to then defend an insured. In the real world, these circumstances happen quite often where you have a defendant in a car accident where the plaintiffs will say, I want the policy limits. They don't just go out and hire a defense attorney for all those different claims. That would be extremely expensive for the insurance company to do so. They only do it when a lawsuit is filed. That's when they need a lawyer to represent their interests. There has to be a tender in order for that to happen. I will pass the baton over to my co-counsel. Thank you. Okay. Thank you, Mr. Harris. Mr. LaGore. Good morning. May it please the Court, my name is Keith LaGore and I'm here representing Smith Reed Eberhard. I certainly welcome the Court's guidance as to how to spend the time. I don't know that there is anything left jurisdictionally for me to address. Was there ever considering the position of my client? But I'm happy to do so and I had some fun looking into Impleter this weekend. But I will start with the substance of the claims against Smith Reed Eberhard. Let me ask one question.  The day sheet I've got says that you're representing Smith Reed Eberhard and Warren. I don't think that's right. That's incorrect. I apologize for overlooking that. You're only Smith Reed Eberhard. Yeah, just Smith Reed Eberhard. Yeah. The issue before this Court with regard to Smith Reed Eberhard is a narrow issue. And that is the gravamen of our argument in the lower court and on appeal with regard to causation. It's a legal malpractice claim and the issue that the district court found that merited dismissal was an absence of causation. This is a very long saga that started with this accident. And as you know, it has a lot of twists and turns and interesting facts in it. But Smith Reed Eberhard's participation in this story is very limited. And this Court's analysis of the underlying story is very limited in temporal scope. It doesn't begin until Smith Reed Eberhard is involved, which doesn't happen until February of—I believe it's—go ahead. The district court ruled in your favor because the superior court had said, well, it was already too late by the time you were involved. That's your defense. On the other hand, you waited six months to try to set aside that default. How come? Or rather your client, I should say. And so I will admit to the panel that that issue is not before the court and actually was decided against Smith Reed Eberhard and the lower court as to the breach itself. But the answer to your question is that my client spent time looking for arguments that would have done better than the white argument that had little chance of success for the exact reasons that it failed. There are other avenues to pursue vacation of a judgment that don't have the same restrictive temporal aspects. They don't have the reasonable diligence prong in white. They don't have the one-year limitation that 60B1 is.  But normal lawyer behavior is belt and suspenders. You might have pursued an avenue that didn't require it. But if you didn't file right away, you're forfeiting the argument that, hey, you've got to act promptly. I believe we argued in the lower court, again, unsuccessfully, and we still believe that the time spent by Smith Reed Eberhard in certain pursuits in that time were worthwhile and didn't lack diligence. Specifically, they sought to get information from Mr. Warren himself as to what exactly happened, where that disconnect occurred, whether it was a filing error where a notice of appearance was filed in a wrong case versus whether there was none ever prepared, what was told to the Wilcoxes versus what wasn't. And I think reasonably believed that more clarity on that issue could have helped a court understand and potentially find in favor of the Wilcoxes on the motion to vacate because of the analysis of whether, one, it was excusable what happened or whether there was an alternative grounds under 60B, such as a fraud grounds or something, or in extraordinary circumstances, grounds that don't carry the same temporal limitations or the other prongs that the court might have turned to. I understand that perfectly, but there was nothing that prevented your client from immediately moving his head aside and then saying to the court, we need to explore a few things. I am not aware of anything that would have been prohibitive of that. Yeah, but on the other hand, it was three months before you were notified and the Superior Court says that that's enough to defeat the claim. Correct, and the Superior Court did, and the District Court did, and the Washington courts have said that's a reasonable finding. I get that. And so our position is that we need to look at just that narrow issue here because the fact that my client did get that motion filed within the one-year time frame means that the court was allowed to review the substance of all the prongs of white. It's not a case like Shepard Ambulance where the delay in filing the motion prohibited the court from looking at the substance at all. It wasn't a we can't entertain this because it's over a year. It was a let's go through the white test, let's analyze each prong, and let's make a decision. The decisions made, the findings made by the Superior Court were specifically set out in the order. The District Court in the malpractice action rightly decided that we can't disturb those findings when they're unrelated to the allegation of malpractice. And so whether the District Court agreed or disagreed with what the Superior Court might have done with regard to prima facie case or inexcusable neglect or prejudice to Mr. Hoff, it was not for them to review those findings. They were independent and unaffected by the sole allegation of negligence, which specifically was the timing of the motion filing. And so what the District Court did, and we think aptly and admirably in light of all of the strands of this case, was focus on causation, focus on proximate cause. What could have changed with different actions by Smith, Reed, Eberhard, specifically with an earlier filed motion, looked at only those findings and determined, as you noted, that the court was going to find a lack of diligence, or the court should have found even a lack of diligence, regardless because of the three-month time period between notice of the default judgment and any action whatsoever, which is something that has been decided by the Washington courts as not sufficient. And for the additional reason we believe that the causation issue is resolved properly by the District Court, because even if the District Court were to step back and say, let's eliminate the diligence findings altogether because there is some interplay between the Wilcox's lack of diligence and Smith, Reed, Eberhard's lack of diligence, the remaining findings that are undisturbed by the Superior Court do not allow for the court to say that the default judgment would have been vacated because the court did expressly find both a lack of defense and that it was not excusable neglect that led to the failure to appear. And although there are many, many cases in Washington about default judgments and the white test, and we have seen cases in the briefings, some where they talk about, well, you can wiggle a little bit on the prima facie defense, and some that talk about, well, we can wiggle a little bit here on what exactly their reason was. What we don't have is that case that says, well, if you're really diligent, then we don't look at either of the primary factors. These are the primary factors. They're the ones that tell us that this case deserves to be heard on the merits and that you deserve it to be heard on the merits because you were simply the subject of a mistake or a misunderstanding and you have a real case to present. The District Court was given those findings and could not disturb them on the basis of the timing of the motion. And so even if a finding of utmost diligence was entered by the District Court below here, it would not lead to a reasonable conclusion that the motion to vacate the default judgment would have been granted. And then we note in our motion, and I don't believe it's addressed in the reply, but it was brought in the summary judgment motion, and we mention it in our response brief, that we moved on the additional basis that there's no evidence in the record of damages that this court can consider so as even if causation was here, there would be a reason to remand this case back down to the District Court. There's no medical evidence. There's no verdict evidence. There's nothing out there in the record for this court to look at and say, here's where the Wilcoxes would have fared better if given an opportunity to take this case to trial. That's absent from the record here. It's still absent from the record. The only semblance of evidence that arises on that issue comes late after our motion for summary judgment has been filed in the form of the late disclosed expert declaration of William Fold, which by the date of the signed declaration itself is obvious to this court that it was not even an opinion that existed until after fact discovery was closed, until after expert report disclosure was due, and after the motions for summary judgment were filed. On that basis, as we discuss in our motion to exclude that, and again in our response brief, there is an automatic sanction for that kind of late disclosed expert testimony on an issue that is a burden of proof for the plaintiff in the case. It's not properly categorized as a rebuttal to anything that we put forth in our motion. It is a response to the fact that we identified there was no evidence. That's not a proper rebuttal expert submission. Thank you, Mr. Liguori. I think we have your arguments. Thank you. Mr. Lawrence. Thank you, Your Honor. First of all, that last issue is not before the court. The district court did not decide the motion to exclude William Fold, and I'm not sure why there was so much discussion about it. With respect to sanctions, obviously the most onerous sanction would be to exclude him, but the court didn't do that below. Thank you. Maybe you could focus on the tender issues in your remaining time. Thank you. Thank you. So you don't want to hear about Smith, Freed, Eberhardt's argument. Okay. All right. I would just say there that I think the district court looked at what the superior court did and the reasons it did it and did not really look to what it should have done. That was a case of respect, if you'll permit me this, where Washington, I don't believe, has a case in which, like the Wilcox's, both their insurer and their lawyers lied to them multiple times about in order to lead to the Wilcox's having a reasonable impression that they were being defended, and I think that is very important to consider. Well, I guess on a tender rule, the point of a tender rule is it's kind of an on or off switch in terms of notice, and so does it matter whether Elizabeth thought that she was tendering the claim? How much of this context comes into whether saying lawsuit is enough? That's really what we need to decide or what the district court needed to decide. Right, and it goes to two things. It goes to the Smith, Freed issue because the question really is does Washington law endorse a lay person not doing anything for three months when they think they're being defended by insurers and lawyers who are lying to them? But to get to the tender issue, I'm not sure what hasn't been discussed yet that you want to hear about, but I'd be happy to address it. So if there's a focal question you have, I'd be happy to address it. Well, I do have a question. You mentioned it already, and that is you suggested that we certify a question to the Washington Supreme Court as to whether it is sufficient to tender the claim before the lawsuit is filed, and that if the claim is tendered, that's a tender both as to the claim and any subsequent lawsuit. Could you say more about why you think that's an open question in Washington law? I think it hasn't been addressed in the way that you've articulated it. I think it has been addressed by the law that we've cited in our brief that says that the duty to defend the claim arises before a lawsuit is filed, and the contract clearly requires Indigon to defend the claim. That is its own language that it put in its policy, and it says claim or lawsuit. So I was a little shocked by Mr. Harris's statement that, well, they get lots of these claims, and so they don't have to defend them because it's too expensive. That's not what their policy says. There's no exception for the insurance company's profit margin to say, well, because of that, we don't get to do it. We understand that, but the question is much more precise, and that is Washington law. And as you read the cases, there's some ambiguity. I guess we can read the cases ourselves and figure out whether we agree. Yeah, I think you might be able to avoid the question by simply ruling that Washington law is clear, that insurance company has to comply with its contract, and the contract says you have to defend a claim. And with respect to tender, they clearly had notice of the claim. The claim demand was sent to them directly to Indigon. Well, we only need to determine whether there's a genuine issue of whether they had notice. That's right. That's right. Anything else? Thank you, Mr. Lawrence. Thank you. And I want to thank the panel for their obvious preparation and engagement with these very complex issues. We thank counsel today for your helpful arguments. That case is submitted, and we will recess for the day.
judges: FLETCHER, JOHNSTONE, Rakoff